**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY** | |
| Plaintiff, | |
| | **Case No. CV-24-438** |
| **VERSUS** | |
| **EQUINOR ENERGY LP AND GRAYSON MILL WILLISTON, LLC** | |
| Defendants. | |

**SCOTTSDALE INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW, Scottsdale Insurance Company ("Scottsdale"), pursuant to 28 U.S.C. §2201(a) and Rule 57 of the Federal Rules of Civil Procedure, and files this Complaint for Declaratory Judgment seeking judicial confirmation that it does not owe insurance coverage to Equinor Energy LP ("Equinor"), or to Grayson Mill Williston, LLC ("GMW") in connection with claims asserted by Torie Bauer in the underlying lawsuit, as set forth below. In support, Scottsdale shows as follows:

**INTRODUCTION**

1.

Scottsdale seeks a judicial determination that it does not owe insurance coverage to Equinor or to GMW based upon certain policy provisions including for their alleged failures to assess or provide adequate protections and warnings to workers of a possible flaw in the electrical grounding of storage tanks and access hatches, resulting in injury, as set forth in the lawsuit styled *Torie*

1

*Bauer v. Equinor Energy LP and Grayson Mill Williston, LLC*, cause no 21-cv-170, in the United States District Court for the District of North Dakota, Western Division ("Underlying Lawsuit").

## PARTIES

2.

At all materials times, Scottsdale was, and still is, a corporation organized and existing under the laws of Ohio, with its principal place of business in Arizona.

3.

Upon information and belief, at all material times, Defendant Equinor Energy, LP was, and still is, a limited partnership formed under the laws of the State of Delaware, registered to do and doing business in Texas. Upon information and belief, Equinor has two members: (1) Equinor Energy Services, Inc. and (2) Equinor Exploration Company. Equinor Energy Services, Inc. was incorporated in Nevada, with its principal place of business in Texas. Equinor Exploration Company was incorporated in Delaware, with its principal place of business in Texas.

4.

Upon information and belief, at all material times, Grayson Mill Williston, LLC was, and still is, a limited liability company organized and existing under the laws of the State of Delaware, with its principal office in Texas. Upon information and belief, the sole member of GMW is Grayson Mill Energy II, LLC. Upon information and belief, the sole member of that LLC is Grayson Mill Intermediate HoldCo II, LLC. Upon information and belief, the sole member of that LLC is Grayson Mill Holdings II, LLC. Upon information and belief, the members of that LLC are EnCap Energy Capital Fund X, L.P., and EnCap Energy Capital Fund XI, LP. Upon information and belief, EnCap Energy Capital Fund X, LP is a Texas limited partnership with its

principal place of business in Houston, Texas. Upon information and belief, EnCap Energy Capital Fund XI, LP is Texas limited partnership with its principal place of business in Houston, Texas.

## NATURE OF THE CLAIMS

5.

This is an action for declaratory judgment to determine an actual case and controversy between Scottsdale, Equinor, and GMW regarding the parties' respective rights and obligations under a certain insurance policy, the "Policy," as defined below.

6.

Scottsdale seeks a judgment, pursuant to this Court's authority under 28 U.S.C. § 2201, *et seq.*, declaring that it does not owe additional insured coverage to Equinor or GMW in connection with the claims alleged by Bauer.

## JURISDICTION AND VENUE

7.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.

Venue is appropriate in the Southern District of Texas because a substantial part of the events giving rise to claims for insurance coverage occurred in the District.

## FACTUAL BACKGROUND

*Underlying Lawsuit*

9.

On August 23, 2021, Torie Bauer ("Bauer" or "Underlying Plaintiff") filed the Underlying Lawsuit against Equinor Energy LP in the United States District Court for the District of North Dakota, Western Division. The Complaint was later amended to add Grayson Mill Williston, LLC as a defendant. The current live pleading in the Underlying Lawsuit is the Underlying Plaintiff's Amended Complaint. A true and correct copy of the Underlying Plaintiff's Amended Complaint is attached hereto as Exhibit "A."

10.

Bauer alleges that she sustained injuries while performing leak detection and repair work at the Jerome Anderson oil and gas facility ("Facility") in North Dakota under a Master Service Agreement between Rusco Operating Company LLC ("Rusco") and Equinor. *See* Ex. A, Amended Complaint ¶12.

11.

On June 3, 2021, Bauer detected leaks coming from the access hatches to several storage tanks at the Facility. She climbed the stairs next to a fiberglass water storage tank, opened the access hatch and "stood upwind from the now airborne hydrocarbons and/or other explosive gases." As the hydrocarbons "flew out of the tank," Bauer was "hit with flames on her face and frontside and then tumbled" down the stairs. *See* Ex. A, Complaint ¶¶24, 25, and 28.

12.

In the Amended Complaint, Bauer alleges that Equinor and/or GMW owned and operated the Facility and were responsible for safely designing and maintaining the storage tanks and access

hatches. *See* Ex. A, Complaint ¶¶17 and 19. She charges that Equinor and/or GMW knew that the access hatches were not properly grounded and could cause a static electricity discharge and explosion like the one that injured her. *See* Ex. A, Complaint ¶16.

13.

Bauer further alleges that Equinor and GMW failed to: provide adequate protection against static discharge and explosions, warn workers of a possible flaw in the storage tank's and access hatch's electrical grounding, or properly assess and advise workers of the hazardous conditions at the Facility. *See* Ex. A, Complaint ¶¶37 and 46. She also claims that Equinor and GMW are vicariously liable for the negligent acts and omissions of the "contractor hierarchy . . . established to conduct all operations" at the Facility. *See* Ex. A, Complaint ¶¶40 and 49. Bauer seeks damages for "physical, pecuniary and mental and emotional injuries and losses."

14.

Equinor and GMW subsequently tendered the Underlying Lawsuit to Rusco and its insurers for defense, indemnity and additional insured coverage under the terms of a Master Service Agreement between Rusco and Statoil Oil & Gas LP, which, upon information and belief, was the previous name of Equinor. Plaintiff has assumed and is continuing the defense of both parties under reservation of rights.

*The Master Service Agreement*

15.

Statoil Oil & Gas LP (as "Company") and Rusco Operating, LLC (as "Contractor") entered into an Onshore Master Service Agreement For Goods and/or Services on May 22, 2017. Statoil Oil & Gas LP ("Statoil") is now known as Equinor Energy LP.

16.

Under Section 12.1, Equinor (f/k/a Statoil) agreed to defend and indemnify the Company Group against claims for bodily injury to the Contractor Group, "Regardless of Fault."

17.

The following definitions apply to the indemnities in the MSA:

> "Company Group" means, individually and collectively, Company, its Affiliates and its co-lessees, joint venture partners and working interest owners in the well, project and/or facility where the Work is to be provided under a Call-out and each of the foregoing's Affiliates, shareholders or members, and contractors or subcontractors of every tier (excluding Contractor Group), their Affiliates, and the respective officers, directors, employees, Invitees, agents and consultants of all of the foregoing[.]
>
> "Contractor Group" means Contractor, its Affiliates and Subcontractors, and each of the foregoing's shareholders or members, and their respective officers, directors, employees, agents, Invitees and consultants[.]

18.

Sections 9.1 and 12.13 of the MSA require Rusco to support its indemnity obligations with certain insurance coverage naming the Company Group as additional insureds. Specifically, Enclosure 2 to the MSA requires Rusco to obtain general liability insurance with broad form contractual liability and sudden and accidental pollution coverages.

19.

Section 14.1 provides that the Agreement shall be governed by the law of the state of Texas.

*The Policy*

20.

Scottsdale issued Policy No. VRS0004992 to Workrise Technologies, Inc., which was effective from February 1, 2021 to February 1, 2022 (the "Policy"). A copy of the Policy is attached hereto as Exhibit "B."

21.

The Policy was issued to Workrise Technologies, Inc. in Austin, Texas.

22.

The Policy is a "package policy" that provides several coverage parts including, commercial general liability and contractors pollution liability coverages that are subject to limits of $1 million per occurrence and $2 million in the aggregate. The Policy does not provide any insurance for "professional liability" coverage.

23.

The Policy contains a Named Insured Schedule Endorsement adding Rusco Operating, LLC as a Named Insured on the Policy.

24.

The Common Policy Conditions, applicable to all coverage parts, amend the definition of an "Insured" under both coverage parts to include "Additional Insureds," which are defined to include:

> Any person or organization the NAMED INSURED is required to name as an additional insured in a written contract or agreement, but only with respect to "your work," YOUR SERVICES or PROFESSIONAL SERVICES performed by or on behalf of the NAMED INSURED for that person or organization. However, such persons or organizations are covered only with respect to "bodily injury," "property damage," "personal and advertising injury," or LOSS arising out of "your work," YOUR SERVICES or PROFESSIONAL

> SERVICES and are not covered for any "bodily injury," "property damage," "personal and advertising injury," or LOSS arising out of the person's or organization's own liability.

Policy, Common Policy Conditions, Section B(2)(A)(2).

25.

The Common Policy Conditions, applicable to all coverage parts, also provides for the recovery of defense costs stating in relevant part,

> b. The Company may advance Claims Expenses and or Loss and pursuant to this paragraph prior to the final discussion of any such Claim, provided such Claim is covered by this Policy. Any such advance shall be on the condition that:
>
> ***
>
> (4) in the event it is finally established that the Company has no liability under the Policy for such Claim, the Insured will repay the Company all Claims Expenses and/or Loss advanced by virtue of this provision.

Policy, Common Policy Conditions, Section D(23)(b)(4).

<u>Commercial General Liability Coverage Form</u>

26.

Under the Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability, Scottsdale "will pay those sums that the Insured becomes legally obligated to pay as damages" because of "bodily injury" that occurs during the Policy Period and is caused by an "Occurrence."

27.

By endorsement, "bodily injury" is defined in the Policy as "bodily injury, sickness, or disease" and "mental injury, mental anguish, shock or death if directly resulting from bodily injury, sickness or disease."

28.

The Policy defines the term "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

29.

The commercial general liability coverage part is also subject to an Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 20 10), which amends the definition of an "Insured" as follows:

> **Section II – Who Is An Insured** is amended to include as an insured [any person or organization that the insured has agreed and/or is required by contract to name as an additional insured], but only with respect to liability arising out of your ongoing operations performed for that insured.

30.

Exclusion "A" to Section I – Coverage A, the Expected or Intended Injury Exclusion, excludes coverage for "bodily injury" "expected or intended from the standpoint of the insured."

31.

Exclusion "E" to Section I – Coverage A, the Employer's Liability Exclusion, excludes coverage for "bodily injury" to an "employee" of the insured arising out of and in the course of employment, but the exclusion does not apply to liability assumed under an "insured contract."

32.

Exclusion "F" to Section I – Coverage A, the Pollution Exclusion, provides that the Commercial General Liability coverage part does not apply to:

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge dispersal, seepage, migration, release or escape of "pollutants":

    **a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph shall not apply to . . .

        **ii.** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

        **iii.** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

* * *

    **e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

33.

The Policy defines the term "Pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Policy, CGL Part, Section V (15).

34.

The Policy defines the term "hostile fire" to mean "one which becomes incontrollable or breaks out from where it was intended to be." Policy, CGL Part, Section V (7).

35.

Under the Testing or Consulting Errors and Omissions Exclusion Endorsement, there is no coverage for bodily injury arising out of:

1. An error, omission, defect or deficiency in:
    a. Any test performed; or
    b. An evaluation, a consultation or advice given; by or on behalf of any insured;

2. The reporting of or reliance on any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

The exclusion applies "even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others[.]" Policy, CGL Part, Exclusion – Testing or Consulting Errors and Omissions (CG 22-33).

Contractor's Pollution Liability Coverage Part

36.

Insuring Agreement A. Contractors Pollution Legal Liability provides, in relevant part:

> The Company shall pay on behalf of the INSURED those sums which the INSURED is legally obligated to pay as LOSS and CLAIMS EXPENSE because of a CLAIM for BODILY INJURY . . . resulting from POLLUTION CONDITIONS, caused by YOUR SERVICES or COMPLETED OPERATIONS . . . only if such CLAIM is made against the INSURED and reported to the Company during the POLICY PERIOD or Extended Reporting Period.

11

37.

Under Insuring Agreement A. Contractors Pollution Legal Liability, "Loss" is defined to mean "expenses, monetary awards or settlements of damages for which this insurance applies including . . . BODILY INJURY."  Policy, Contractors Pollution Liability Part, Section IV (P).

38.

A "claim" is defined in the Policy as "any written notice, demand or request for defense, request for indemnity, or other legal or equitable proceeding against any INSURED by a person, entity or asserted class for LOSS."  Policy, Contractors Pollution Liability Part, Section IV (D).

39.

The Policy defines a "pollution condition" as "the release, escape, seepage, discharge, dispersal of resulting migration of any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, electromagnetic fields, hazardous substances, hazardous materials . . . on, in, into, or upon land and structures thereupon, the atmosphere, surface water or groundwater."  Policy, Contractors Pollution Liability Part, Section IV (X).

40.

Exclusion I precludes coverage for "anything covered" under the CGL section.  Policy, Contractors Pollution Liability Part, Section III (I).

*The Excess Policy*

41.

Scottsdale issued Policy No. VES0003267 to Workrise Technologies, Inc., which was effective from February 1, 2021 to February 1, 2022 (the "Excess Policy"). A copy of the Excess Policy is attached hereto as Exhibit "C."

42.

The Excess Policy was issued to Workrise Technologies, Inc. in Austin, Texas.

43.

The Excess Policy provides commercial excess liability coverage that is subject to limits of $10 million per occurrence and $10 million in the aggregate. Pursuant to the Schedule of Underlying Insurance [VE E 200], the Excess Policy provides coverage in excess of the coverage limits of the underlying commercial general liability coverage and contractors pollution liability coverage in Policy No. VRS0004992.

44.

The Excess Policy contains a Named Insured Schedule Endorsement [VE E 322] adding Rusco Operating, LLC as a Named Insured on the Policy.

45.

The Excess Policy is a following policy and provides in relevant part that the "insurance provided under this [Excess] Policy will following the same provisions, exclusions and limitations that are contained in the applicable UNDERLYING INSURANCE, unless otherwise directed by this Policy." Excess Policy, Form VE P 0612, Coverage Form preamble.

**DECLARATORY RELIEF**

46.

Scottsdale adopts and incorporates by reference all of the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

47.

There is an actual, present and existing controversy between Scottsdale, Equinor, and GMW regarding Scottsdale's obligations under the Policy in connection with Bauer's claims in the Underlying Lawsuit.

48.

Pursuant to the MSA, Rusco was to support its indemnity obligations with certain insurance coverage naming the "Company Group" as additional insureds. *See* Sections 9.1 and 12.13 of the MSA. Equinor and GMW are members of the "Company Group" as defined in the MSA. In accordance with the terms of the MSA, and in light of the Commercial General liability Part of the Policy's Blanket Additional Insured Endorsement, Equinor and GMW are "insured[s]" under the Commercial General liability Part of the Policy. Equinor and GMW may also qualify as "insureds" under the Contractors Pollution Liability section, pursuant to the Common Policy Conditions, but only to the extent they are vicariously liable for Rusco's conduct.

49.

Bauer alleges that Equinor and/or GMW knew that the access hatches "were not properly grounded and could cause a static electricity discharge and explosion." *See* Ex. A, Complaint ¶16. Exclusion A to Section I – Coverage A, the Expected or Intended Injury Exclusion, precludes coverage for "bodily injury" "expected or intended from the standpoint of the insured."

50.

Bauer allegations and claimed entitlement to recovery purportedly stem from errors, acts, omissions, negligence and/or liabilities attributable to Equinor and/or GMW. The Common Policy Conditions expressly exclude losses arising out of an additional insured's own liability. Thus, coverage does not exist for any direct liability of Equinor and/or GMW for Bauer's alleged incident.

51.

Bauer was allegedly injured by a static explosion caused by the release of hydrocarbons—"pollutants"—from a storage tank. *See* Ex. A, Complaint ¶¶ 24-28. The Pollution Exclusion provides that the Commercial General Liability part does not apply to bodily injury arising from the release of pollutants:

> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to . . .
>
>    (ii)   "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

If GMW and/or Equinor is considered an "insured" under the Policy and GMW and/or Equinor owned the Facility at the time of Bauer's accident, then Section (a) precludes commercial general liability coverage for GMW and/or Equinor and no coverage is afforded under the Policy.

52.

In addition, under Section (e) of the Pollution Exclusion, there is no coverage for bodily injury arising from the release of pollutants:

> (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any

> insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

Because Bauer's "leak detection and repair" work at the Facility constitutes "monitoring" or "containing" pollutants within the scope of Section (e) of the Pollution Exclusion, there is no coverage under the Policy for Bauer's claims.

53.

To the extent Bauer's claims for bodily injury resulted from an error, omission, defect or deficiency in any test performed, or evaluation or consultation by or on behalf of any insured, coverage does not exist under the Policy's Testing or Consulting Errors and Omissions Exclusion Endorsement. This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others.

54.

Because Bauer alleges that Equinor and GMW were aware that hydrocarbons emitted from the storage tanks could cause a static electricity discharge and explosion, the "pollution condition" was not "unexpected or unintended" and coverage does not exit under the Contractors Pollution Liability Part of the Policy, which only covers claims for bodily injury resulting from a "pollution condition" that is "unexpected and unintended." Policy, Contractors Pollution Liability Part, Section I (A)(2).

55.

Even if coverage did exist for Equinor and/or GMW under the Contractors Pollution Liability Part of the Policy, the Professional Liability Exclusion precludes coverage for bodily injury arising from a claim for the rendering of "professional services," defined to include "design

16

and engineering work" and "equipment selection." Policy, Common Policy Conditions, Section B(2)(A)(2). Because Plaintiff alleges that Equinor and/or GMW designed the improperly-grounded storage tank and access hatch, the exclusion applies and there is no coverage under the Contractors Pollution Liability Part of the Policy.

56.

Moreover, and to the extent coverage is found to exist for either Equinor or GMW under the Commercial General Liability Part of the Policy, Exclusion I of the Contractors Pollution Liability part precludes coverage for "anything covered" under the Commercial General Liability Part of the Policy.

57.

Scottsdale respectfully urges this Court to enter a declaratory judgment that Scottsdale does not owe either a duty to defend or indemnify Equinor or GMW in connection with the claims asserted by Bauer in the Underlying Lawsuit in keeping with the Prayer for Relief set forth below and/or any other relief to which Scottsdale proves entitlement.

58.

Scottsdale respectfully urges this Court to enter a declaratory judgment that Scottsdale is entitled to recover and that Equinor and GMW are required to reimburse Scottsdale for all legal fees and other costs paid by Scottsdale in the defense of the Underlying Lawsuit. *See* Policy, Common Policy Conditions, Section D(23)(b)(4).

59.

The Excess Policy is a following policy, "following the same provisions, exclusions and limitations that are contained in the applicable UNDERLYING INSURANCE" [Excess Policy, Form VE P 0612, Coverage Form preamble]. Scottsdale respectfully urges this Court to enter a declaratory judgment that Scottsdale does not owe defense, indemnity, or additional insured insurance coverage to Equinor or GMW under the Excess Policy.

60.

In addition to the foregoing provisions, Scottsdale pleads all other conditions, terms, warranties, limitations, definitions and exclusions of the Policy and/or Excess Policy, which also may be found to be applicable as the investigation of this matter continues, and reserves the right to amend its Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

**PRAYER**

WHEREFORE, on the bases of the foregoing and after due proceedings had, Scottsdale Insurance Company respectfully prays:

a. That the Defendants Equinor and GMW be cited to answer and appear;

b. That this Court enter a judgment declaring that Scottsdale does not owe defense, indemnity or additional insured insurance coverage to Equinor or to GMW under the Policy for their own liability in the Underlying Lawsuit;

c. That this Court enter a judgment declaring that Scottsdale does not owe defense, indemnity or additional insured coverage to Equinor or to GMW under the Policy

because they had knowledge that the hatches were not properly grounded and could cause a static discharge or explosion as alleged in the Underlying Lawsuit;

d. That this Court enter a judgment declaring that Scottsdale does not owe defense, indemnity or additional insured insurance coverage to Equinor or to GMW under the Policy because they improperly designed the storage tank and/or access hatch as alleged in the Underlying Lawsuit;

e. That this Court declare that Equinor and GMW shall reimburse Scottsdale of all legal fees and other costs paid by Scottsdale in the defense of the Underlying Lawsuit;

f. That this Court enter a judgment declaring that Scottsdale does not owe defense, indemnity or additional insured insurance coverage to Equinor or to GMW under the Excess Policy; and

g. That this Court grant such further and different relief as may be appropriate to accomplish justice and equity among the parties.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:  */s/ Katharine R. Colletta*
Katharine R. Colletta
Texas Bar No. 24053149
Federal Bar No. 725375
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534

Telephone: 504-566-1311
Telecopier: 504-568-9130
Email:  katharine.colletta@phelps.com

**ATTORNEYS FOR SCOTTSDALE
INSURANCE COMPANY**